Good morning, your honors. Please the court. My name is Jeffrey Steele. I'm here for appellant. Our issue is simple and straightforward, and that is that the district court erred by granting summary judgment on a motion that was not right for summary judgment. The evidence wasn't clear. The particular issue at fact here has a copyright protection, and so therefore, there's a presumption that it is copyright material. The district court took no evidence of that, and I'm here for appellant. The second issue with regards to that is that it failed to take into account the seminal ruling in Citava v. Lowery, which Justice Gould authored several years ago. In there, it's very clear that, and it's one of those issues where it's, it's, the Justice Gould said it gave us thin projection for copyrighted material. Now, there's a presumption here that it's copyrighted material because it's a copyright that has been issued. And so the, at the very least, the district court should have taken evidence with regards to that issue before granting summary judgment. And this is an issue where we're talking about the depiction of live animals. Now, we know, based on Citava v. Lowery, that there is protection for that. Justice Gould wrote that it was thin protection at the time, but nevertheless, it was protection. Yet the district court didn't give us the opportunity to bring forth the evidence that showed the virtual copying of the work by my client versus what was copied by Appelli. We have to, as Justice Gould wrote, vigorously police the line between idea and expression. And what is meant by that narrow protection? And I would argue that in today's world where we have 3D printers, laser printers, and things like that, we have to even be more vigilant with regards to that narrow protection and perhaps maybe even increase it slightly in order to give the lower courts the understanding of what should be protected in a copyright. Granted, the photographing of something in nature cannot be copyrighted in and of itself. But here we have a specific pose, we have specific work done, and the artwork that the Appelli produced was simply an enlargement of those areas. Kennedy. Help me understand what difference it makes if you have trainers pose the dolphins as opposed to if, in fact, what they're posing also happens in nature. Well, that's an interesting question, Your Honor, because if they're posing them, how do we know it can happen in nature? In this particular instance, the evidence wasn't allowed in the district court to ascertain that, and we think it should be. This pose will be shown not to occur naturally. If it doesn't occur naturally, it's subject to the copyright protection, and as such, should have been protected in this particular case, and summary judgment should not have been granted. That is a question that at the very least the jury should have gotten a chance to decide. But they're swimming in the ocean. How could you demonstrate that this particular pose is not natural? Through expert testimony and through the testimony of the people who actually did the work, because they can testify as to what they did to put these particular animals in the positions they were in. So the burden then would fall to the opposing party to say, no, it does appear in nature, and he would have to bring in his experts who would say that. But it would be an issue for a jury to decide, because it's a factual question, not one ripe for summary judgment, which, as this panel well knows, is disfavored in copyright cases. What do we see in the images that the district court was looking at that clearly does not happen in nature? The idea of the dolphin rising straight up. This is not something that we see. They're swimming in the ocean. Yes, Your Honor. Doesn't that occur from time to time? Except that we have not just the one dolphin, but the other dolphin. We have a posed image. We have an image that was created by the artist. This isn't one that wasn't swimming in the sea and took the picture. This was created by the artist. And as such, needs and requires to have that copyright protection. Otherwise, what you're in essence saying is any creative aspect done by an artist isn't subject to copyright protection. And, of course, that's not what this district has held for years. So the protectable elements here are, in your view, the dolphins crossing? The posing of the dolphins crossing, yes, Your Honor. Among other things as well, but fundamentally that's it. And so even though that could potentially happen in nature, are you saying it's not ever possible for that to happen in nature? One never knows what's ever possible to happen in nature. But the only way the district court could ascertain that is if they had had some testimony as to that fact. I think I'm following the language in Satava on whether it could happen in nature. So I'm just trying to figure out why you think. Because in Satava, the actual line is an artist may, however, protect the original expression he or she contributes to these ideas. An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of an animal. An artist may vary the background, the lighting, the perspective. Such variations, if original, as we maintain they are here, may earn copyright protection.  In 1979, there was already a copyright issue. So there's a presumption that this particular piece of art was copyright protectable. And for the district court not to allow evidence into there with regards to that defeats the whole purpose of issuing the copyright. You read Satava to suggest that any one of those variations can create protectable material? I believe it does, Your Honor. As opposed to several of them combining in a particular image. Well, I think that would be something that I would like this Court to perhaps expand on the, quote, narrow protection that you currently have. Because there's nothing that says that any one of these isn't sufficient. It gives a list, but it doesn't say only you have to have two, three, four of these. Satava is very clear that anything there, as long as the artist is creating this idea and expression, is copyright protectable. And it's very clear in Satava, and again, Judge Gould wrote, we do not hold that realistic depictions of live animals cannot be protected by copyright. In fact, we have held the contrary. This panel has had a long history of protecting artists' work. And just think about what it would mean if this wasn't protectable. This would mean that literally any artist's work or expression would not be protected by that artist, and anyone could copy it. And especially now where we have so many different ways of copying things, artists would never be able to gain anything from their work. So our position is clear that the evidence necessary for the district court to render a proper decision wasn't before them. Well, but, I mean, if we granted you copyright over the Dolphin's Crossing, which seems to be very close to something that could happen in nature, are we constraining the purpose of the Copyright Act to allow for the free artistic expression? I believe you have to make the Copyright Act stand for what it was meant to stand for. And that was to give the artist protection. And to now say that, well, even though the evidence will be that, or the evidence was this was a posed position, that this was done by individuals, to say that, well, maybe it happened in nature, defeats what a copyright is for. And as such, that would make the artist unable to profit, for lack of a better word, from their work. And we want them to because we want artistic creations. And to allow for all that happened here was the enlargement of the depiction. That's it. Just the enlargement. Seems to defeat the whole purpose of the rule. So with that in mind, our request would be twofold. One, that this case be remanded back to the district court for an actual trial on the matter. And if I may, I would like to also suggest that this panel take a look at what we mean, or what you mean, by the narrow or thin protection. And perhaps now, into today's society, with all of the available technologies, expand that so it's a little bit more protective of the artist's work. So TAFA was a terrific beginning, and I think it can be expanded on, to include a more detailed analysis of the expression. Now, since we're in this area right now, and we've discussed what this would mean to other artists. If we look at some of the exceptions there too, we find that they're not applicable here. Because all of the other cases that have been cited by the appellee are not a virtual copying of the work. So as such, we would request that you remand the case and go forward with that. If the Court doesn't have any further questions, I'll reserve the rest of my time. Thank you. If it pleases the Court, Mark Rissman, appearing on behalf of the respondent. First, I ask the Court to take notice that this is a comparison between a pen and ink illustration of two dolphins, versus a colorful painting depicting dolphins in their natural environment with other fish, marine plants, and clearly showing an ocean surface above. There is, except as the lower court noted, there is no other similarities, either in the standard set in previous Ninth Circuit cases, as far as colors, positioning, surroundings, medium. This case is even more clearly defined than the case of Setava. We must remember that Setava was decided not on the basis of protection of an artist's rights, but as the majority opinion so properly wrote, the Copyright Act denies artists the exclusive rights to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public. This is an important matter, and it was properly considered by the lower court in its decisions. We have talked, or the Court asked, about positioning of dolphins in nature, and Mr. Steele denies that dolphins swim vertically. Well, I can take two great examples. One, dolphins are mammals and they have to go to the surface, and they can't go to the surface by swimming horizontally only. They do swim vertically. And we have all seen, whether it be at marine animal parks or on old flipper shows, dolphins swimming vertically, even breaking the surface, and swimming backwards and forwards in a completely vertical manner. The Court can take judicial notice that dolphins swim horizontally. As a matter of fact, as part of the granting of the summary judgment motion, the lower court recognized that dolphins are social animals. Dolphins swim, they swim vertically and horizontally, and because they are social animals, that them crossing while swimming together is something that is found in nature. What would Artista Fulcans have had to have done or do to change his arguably realistic, you know, depictions of the dolphins to make it entitled to the protections, at least as was described under Citava? Well, what the original artist would have had to do... Well, in this case, yeah, what would he have had to do to get the protection he seeks? Well, it certainly isn't by comparing a pen and ink work of two dolphins in nature with a full-color rendition of three dolphins, not two, but three dolphins in a social setting with other marine life, both plant and animal, and instead of showing it without any surface or context to the ocean, showing it being within the ocean. It's like the old Supreme Court definition of what is pornography. I might not be able to tell you what it is, or I might not be able to tell you what it isn't, but I can tell you what it is when I see it, and in this case, the appellant's claim of infringement does not, pardon the pun, but hold water in this matter. Moving on, another example is the training aspect, and I believe I used in my brief that you could have a trainer sit a German shepherd, use a shock collar so it maintains a sitting position until the artist is finished with his or her illustration, and that does not give it copyright protection under CITAVA when compared to an allegedly infringing work which shows a similar dog in a similar pose sitting with a family near the dinner table and surrounded by other matters. Over one-third of the subject picture by the respondent has the third dolphin and the other type of marine life, and that is certainly what the lower court and what this court can use to determine that there's not substantial similarity here  Your position is that you make the judgment based upon all of the elements that are contained in the original artwork, all of the other fish in the water and the plant life and so forth, and all of that becomes something that's protectable, not just the isolation of the two dolphins? To the extent that the intrinsic element becomes a part of the extrinsic determination by the lower court, yes. However, before we get there and the lower court properly found there is substantial... Well, there was a lack of extrinsic evidence on the part of the appellant to show that protectable elements of the appellant's work were copied in any manner that deserved protection and would prohibit the public from artistically expressing two dolphins swimming in the water amongst the scene, a general marine wildlife scene. So under the extrinsic test for substantial similarity, that's how you would break down the elements of your work, of your client's work, or how would you break it down? Well, I would start with saying that my client, as a diver, as someone who's very involved in marine charities and is recognized in the diving world, that A, he is familiar with dolphins, their anatomy. There have been over a hundred public buildings in which he's painted dolphins on at the request of municipalities and governments. We all know from Setava the anatomical proportions of the dolphins are not copyright protected. He has observed them in the wild. He has seen them swimming vertically. He has seen them swimming horizontally. As the judge in the lower court said, when you take these kind of animals and they're swimming socially, you see this position in the wild, this crossing position. And he was not trying to create the same type of work as the same type of audience that the appellant did. The appellant's work is a completely different type of artistic expression and so to the extent that the surrounding portions of the photograph contain other dolphins, contain other marine plant life, contain a depiction of an undersea image with a surface and the animals interacting below, yes, I think that could be certainly considered as differentiating in the substantial similarity tests. And I think that's what the court found. It said that it did not find any substantial similarities. Counsel, Judge Gould, if I could interject a question. Do we look at just whether protected elements are substantially similar or do we look at everything? I think a combination of both. I think the appellant, if we look at everything, there's no similarities, substantial or otherwise. There's no likelihood to use a different standard, likelihood of confusion. They're completely different. As I say, one is a pen and ink illustration and the other is a multicolored marine life scene with more animals including more dolphins. So if we use everything overall, there's no similarity. If we take what the appellant claims has been infringed and two pen and ink drawings of two dolphins, then we look at the CITAVA standard and we say, well, what has been, what element is protectable there? Is it the anatomy of the dolphins? And I would argue under CITAVA, absolutely not, as well as under Chen, absolutely not. The appellant, even in his briefs, acknowledged that there are physical differences between the two dolphins that are the subject of the suit. So there's not even an extrinsic resemblance between the two dolphins. So whether we look at it from a micro or a macro state, I don't believe that it meets the extrinsic or intrinsic test. And I think what the lower court found as a matter of law could certainly be reached by this court under, and I love the lower court's analysis, comparing it to a narwhal's tusk in the sea of Ninth Circuit decisions. And I think this court has consistently, under stare decisis, upheld summary judgments such as before this court. And when appellant's counsel said that they were not given opportunity to present evidence, they absolutely are. If they believe that this was not found in nature, they had the opportunity to submit affidavits from these trainers, from marine biologists, and everybody else, and were given plenty of opportunity to refute the summary judgment. And to ask for that opportunity now seems a day late and a dollar short, in my opinion. And we're here to protect the public. We're here to protect such stare decisis. And although this is a de novo matter, certainly when reading the opinion of the lower court, they gave it a great deal of consideration. They even discounted appellant's attempt to mislead them when they submitted evidence of direct copying, which turned out to not even utilize the allegedly infringing painting that was the subject of the action. So I think denying appellant's appeal and upholding the lower court's decision is what's called for here. How much, I guess, deference do we lean into the importance of posing or getting the animals to, you know, apparently look exactly as they did? I mean, is that a great question of fact combined with the protectable elements that we need to let that go forward? I think if ‑‑ I've used an example of a dog sitting in a trainer using a dog collar. I have seen paintings and visual art of dogs playing poker. Now, if he used a trainer to get the dolphins to play poker or use a computer or play chess or whatever something unique found in nature would be, then the posing is very important. But the fact that the posing was done not to create something not in nature, but was to do something to allow multiple photographs from which the artwork would later be derived, the appellant's artwork, and the training and the posing was done to keep the animals in a position for moments of time which would normally be fleeting, then that's not worthy of protection. That doesn't change the standard of satava any more than if in satava the original artist had a jellyfish in an aquarium and used that as the subject matter. With that being said, with no further questions, I thank you for your time. Thank you. Thank you. With respect to counsel's example of the sitting dog, if that sitting dog is put into a position that is held there by the trainer and the photograph is taken, the identical copying of that photograph, if that photograph gets copyright protection, it's a violation. Now, here we have an interesting thing. Potter Stewart's I know it when I see it reference is applicable here, because we haven't had a chance to show what we know when we see it, because no jury under the extrinsic or intrinsic test got an opportunity to look at the two pieces of artwork and make a distinction. That has nothing to do with the protected elements, and because copyright protection was given to this work, clearly there are protected elements. The direct evidence of copying can be made in this case and should be made, because it will show that there are aspects of the work that were simply enlarged. Not anything more than that, but that's sufficient to violate the copyright. And the extrinsic text considers whether there are substantial similarities in both ideas and expression. And here we have a work of art that is the idea of the artist and expressed accordingly, and as such is, by the fact that it was given copyright protection, is copyrightable. There's no evidence before the Court regarding whether or not these particular dolphins acted the way they did in nature. And as such, you can't make the leap that they would, because without the evidence, there's no way to know if this particular artwork happens in nature. So we can't make the leap that they would, because without the evidence, It's not that we didn't make a more thorough. This was a decision by the lower court that had not been briefed by the parties. It actually came somewhat out of left field, and we were not in the position at that time to present the expert evidence that we should be entitled to to a jury, which  Sotomayor, I don't understand. What came out of left field? I want to make sure I understand what you're claiming came out of left field. The district court's summary judgment opinion was not what either side was actually expecting. We didn't present the evidence on those issues because that wasn't before the court at the time, which is why the extrinsic and intrinsic tests were not made therein. Because the court took on itself the role of the jury, which in summary judgment, which is disfavored in these types of cases, was inappropriate. The jury should have the right to analyze the material that is subject to the copyright protection and make the ruling accordingly. Was it not argued below that this does not happen in nature, that it was uniquely posed? It was not argued. There was a ‑‑ our argument was that it was posed, but there was not the evidence brought because that was not what the summary judgment motion was about for us to bring forth that evidence.  What was it about? There wasn't that issue. Fisher. The summary judgment motion was about the difference between pen and ink versus color, the unprotectable elements of the fish, the additional fish, and not the protected elements that we were at issue here. I got to tell you, I got a different impression from the record in this case than what you're telling me now. Well, I apologize, Your Honor, but that's the way I look at the record. We'll look at it again. Yes, Your Honor. Our other issue here is very simple, and that is, is that without the protection granted by CITAVA, and again, a thin expression, protects virtually identical issues. And here we have them. We have a virtually identical representation of the dolphins, the pen and ink versus the painting. We are not talking about the unprotectable items, the fish, the light, the things like that. We're talking about those that were already granted copyright protection. With that in mind, we respectfully request the Court to at the very least remand this back for a full trial, because I think that, more than anything else, will allow the parties to present all the evidence necessary and also decide whether or not this is indeed copyright material which deserves the protection that it's entitled to. Thank you. Mr. Steele, Mr. Risman, thank you very much for your arguments here today. The matter of Vulcans versus Wyland Worldwide is now submitted.
judges: Gould, Murguia, Gritzner